This is the Intervention Appeal, and I hear from Ms. Perales. Nice to see you again. Nice to see you, Your Honor. Good morning, and may it please the Court. The District Court departed from this Court's established case law by refusing to allow the Jane Does, the only individuals directly affected by the administrative guidance at issue, to intervene and defend their interests in the case. Not only did this Court's precedents require intervention of right under Rule 24a2, but the events in this case have demonstrated that the federal government is adverse to the Jane Does and cannot represent their interests. The developments this week, in which the federal government admitted to additional violations of the District Court injunction and the District Court's show cause order, requiring the personal attendance of the Secretary of Homeland Security, further demonstrates that the federal government has suffered a severe loss of credibility and cannot defend the Jane Does' interests. Apart from the issue of credibility, has the government taken legal positions now that are adverse to your client regarding perhaps excluding your clients from the driver's license category in their latest briefing, and also saying in other earlier briefings that there are no interests of possible third parties in these driver's licenses? Would that be some developments that have occurred? Yes, Your Honor. In addition to the loss of credibility, the federal government has taken a position legally that is adverse to the Jane Does by arguing that states need not offer driver's licenses to individuals with deferred action. Is that adverse to your client? Yes. Yes, Your Honor, it is. And also I'd like to add that there is an argument that the federal government has not made that the Jane Does believe is important to make and they would make, and that relates to the standing issue of Texas. And specifically, as the motions panel noted, the federal government has not challenged the factual assertions underlying Texas's claim of injury in support of its standing argument. And this is something that the Jane Does do believe is an argument that should be made that is not being made. So for a variety of reasons, Your Honor, the representation of the United States is inadequate. And I want to clarify that my question was your argument that the government has a credibility issue, not a statement of the court by any means. You understood that. It was just me repeating what your argument was, right? Yes, of course, Your Honor. But I would like to note that there are two very important orders from the district court in this case that highlight the credibility issue, the April 7th order in which the district court found that the federal government committed unacceptable misconduct. The district court further found that the federal government had misrepresented the facts about its implementation of the guidance before February 18th at the same time that it had assured the court that it was not moving forward on the 2014 guidance and that the district court issued a sweeping discovery order that left open the possibility of sanctions up to and including striking the federal government's pleadings. Then, after the federal government filed another advisory in May, admitting that it had violated the district court's injunction by issuing 2,000 more documents pursuant to the 2014 guidance when it was enjoined, the district court this week found specifically that the federal government had violated the court's injunction, that the federal government had a cavalier attitude and wasn't moving fast enough to cure the violation, and then the court set the show-cause hearing that I mentioned earlier, requiring the personal attendance of the DHS secretary and the heads of various agencies. What is the best case that you have for the proposition that you can have an adversity of interest even if you're both seeking to uphold the directive because you have different reasons for doing so? There are a number of cases from this court, Your Honor, including Sierra Club v. Espy, Sierra Club v. Glickman, and Brumfield, which is the court's most recent declaration. So there is first an issue where we would argue that there is no presumption of adequacy of representation because the federal government is neither the legal representative of the does in this matter and also because the federal government doesn't share the same ultimate objective. But even if the court were to find that we had the same ultimate objective, the cases that I just mentioned, Espy, Glickman, and Brumfield, really talk about the tensions when an administrative initiative is being challenged for the governmental entity to represent both the broad, generalized public interest and the private, very specific interests of people who would be affected by that policy, we are even beyond the situation that the court discussed in Espy, Glickman, and Brumfield because the federal government has already made arguments that have created adversity with the does and also have not raised arguments that the does feel are critical. So as this court explained in Brumfield, the lack of unity in all objectives combined with real and legitimate additional or contrary arguments is sufficient to demonstrate that the representation may be inadequate. Now, another reason that the district court gave in its order was the fact that the case was on a very fast track. The case has now been stayed, hasn't it, in the district court for now. Does the change in circumstances support your position or not? Yes, Your Honor, it does support our position, although I'd like to note that in the order denying intervention, the district court simply said that Rule 24A2 is inapplicable. Then about a week later, the district court, in its preliminary injunction opinion, talked about the fact that the case was underway. At that time, Your Honor, I would like to point out that there was no scheduling order in the case, and the only schedule that was in place at the time that the court denied the intervention was simply a schedule to finish the briefing on the preliminary injunction and allow Tennessee to come in on an amended complaint. Okay. Am I looking at the wrong order that says, finally pursuant to Rule 24B3, the court finds the matter to be time-sensitive and the addition of new parties will cause the delay in presentation? That's the correct order, right? Yes, Your Honor. Under permissive intervention, yes, the court did find that there was a time-sensitive nature to the case, yes. And that's not – would your client's participation delay that? No, not at all, Your Honor. And, in fact, under Rule 24A2, the fact that an additional party, if they have the right to intervene, might add some complexity of issues to the case is not a reason to deny intervention. And the does have not done anything or filed anything that would slow this case down, Your Honor. What's our standard of review here on denial of intervention as of right? The standard of review is de novo, Your Honor. So we don't have to find that the district court abused its discretion? Not at all, Your Honor. The court is perfectly free to take a fresh look at this issue. But on the permissive, we would? The permissive intervention? Well, we have appealed the denial of intervention of right. Only on the right and not on the permissive? That's right, Your Honor. The court has a great deal of leeway under permissive intervention, and we're here to present our arguments under intervention as of right. Can you address the argument made by your various opposing counsel here that your interest cannot be legally protectable when DAPA expressly disclaims that it's conferring legal rights? And should the court be concerned with that at all? No, Your Honor, and this is why. I'd like to note, since Your Honor has already pointed it out, the Doe's have no friends here, and that is from the court's decision in Atlantis. And now turning to the argument that the federal government has made that the Doe's have no interest sufficient to support their intervention, the Doe's, in fact, do have a direct, substantial,  Whether or not an interest is legally protectable turns on whether substantive law recognizes it. Substantive law recognizes the interests of the Jane Doe's that will be affected by the 2014 guidance. Their interest in the care and custody of their children and their interest in remaining in their communities are all liberty interests that are protected by the Due Process Clause. The Doe's interests are also direct and substantial. These are the types of interests that were recognized by this court in Brumfield v. Dodd, where the court allowed intervention by parents who wanted to receive school vouchers for their children and send their children to the private schools of their choice. The court said that the potential for Louisiana's voucher program to be enjoined under various desegregation orders threatened a prospective interference with educational opportunities. And directly to the federal government's argument, where the federal government gets this wrong, Your Honor, is that the Doe's do not have to have a vested or enforceable legal right in the 2014 guidance in order to show sufficient interest for their intervention. In Brumfield, for example, which I just mentioned, the parents didn't have a right to sue for school vouchers, but they did have a sufficient interest in intervention because those vouchers were going to affect their children's prospective educational opportunities. Similarly, this court's decisions in Edwards v. City of Houston, the en banc decision, Edwards 2, as well as Black Firefighters, which were both affirmative action cases, found that there was a sufficient interest to support intervention because of the interest in future promotional opportunities or prospective promotional opportunities. Obviously, the intervening employees did not have a right to sue for a promotion, but they had a sufficient interest. And finally, in Espy, Your Honor, the timber companies that were found to have sufficient interest for intervention did not have a legal right that they could sue to purchase and cut the less expensive timber that was being made available by the United States, but they did have sufficient interest to intervene because they had an interest in purchasing and cutting that timber so that they could fulfill contracts that they had with other companies. I think I've sat on most of the panels that you've mentioned, and it is my impression that our court has taken a more expansive view of intervention maybe than some of the other circuits. I'm just mentioning that to say that perhaps your opponents can dispel that, but it seems to me that our court has a record of being fairly generous on interventions such as this. In these types of issues, yes, Your Honor, I would agree, and I wanted to add before we moved off of the sufficiency of interest that this is also a public law case. It meets both of the criteria that the court has set out for public law cases, the first being whether there is a public interest question. And here, of course, the question in the main case is whether the 2014 guidance is constitutional and whether it's legal. I'm sorry, Your Honor. How do you distinguish the Vesey case with the True the Vote that was denied the intervention recently? Your Honor, this court does have a line of cases that deny intervention, and those are cases that are quite different, whether it's Hopwood or whether it's Vesey. They're very different because the interests are closely aligned. There is a presumption of adequacy of representation, and there's no information rebutting that presumption. So there could have been a presumption initially, but you believe there's now substantial or at least some thing to rebut it. Yes, Your Honor. Of the two presumptions, whether the federal government is the legal representative here, we would point out that presumption doesn't apply because the federal government doesn't represent the interests of the Jane Does, their personal private interests, in remaining in the United States. The federal government represents the interests. I'm sorry, Your Honor. The federal government represents the interests of broad general interests. And also, even if the same ultimate objective interest applied or same ultimate objective presumption applied, which we don't believe it does, because of these very distinct interests of representing the public interest versus the private interests, it would have been rebutted certainly by now, Your Honor, with the adversity and the failure to raise arguments that the Does would raise. Thank you, Your Honor. You've saved time for rebuttal, Ms. Peralta. I have, Your Honor. Thank you. Potapoff. May it please the Court, Alex Potapoff for the Plaintiff States. The Jane Does are not entitled to intervene because defendants adequately represent their interests in this litigation. I'd like to begin with the question of the presumptions of adequate representation because both of the presumptions articulated by this Court are applicable here. First of all, the Jane Does and the defendants have exactly the same ultimate objective in this case. Specifically, both of them are attempting to have DAPA upheld in its entirety. So that creates a strong presumption that defendants are adequately representing the interests of the Jane Does. Secondly, the second presumption of adequacy is that governments are presumptively adequate in the defense of their own laws and their own programs, and here the federal government, which has been recognized as adequate in a variety of settings, is defending a very important federal program. So we think there's a strong presumption that they're an adequate representative of that legal position. That presumption was overcome in several of the cases that Ms. Peralta has cited from this circuit. Certainly. The presumption can be overcome. And as this Court explained in Vesey, the way to overcome it, at least if you're arguing adversity, is to show a pronounced incongruity of interests. It's certainly not enough merely to say we are the regulated and they are the regulators, so therefore we have private interests and they have governmental interests. All right. Well, as a pronounced incongruity, what about the driver's license argument that's being made in which the United States has said that the state is free to deprive these persons of the right to get a driver's license? And they have an obvious interest, I hope you agree, in obtaining a driver's license. Absolutely, Your Honor. So first of all, we would say that that is a purely legal disagreement, which can be fully aired out in amicus briefs, and this Court has said that generally speaking intervention is not appropriate when the interest can be fully vindicated through other means. And I think what is especially interesting here is, of course, the Jane Does have filed an amicus brief in the underlying litigation here, and they have not made this argument that DAPA preempts state driver's license programs, which is very odd given that they're suggesting that it is such an important argument for them. And in front of the district court, not only did they not make that argument, but they actually joined and incorporated in full the government's brief, which was taking the opposite position, which is that DAPA does not preempt state driver's license programs. So in other words, not only is it merely a legal disagreement, but it's also a post hoc legal disagreement, and we think that there is a serious reason to doubt whether or not they ever will press this argument aggressively because it is so inconsistent with their position on the merits. If they ever really articulate the view that DAPA actually has the legal consequence of preempting state driver's license programs, we think it would become completely obvious that, even more obvious perhaps than it already is, that DAPA is a substantive rule with legal consequences and had to be promulgated with notice and comment, which it was not. Then why wouldn't you want them in the case? Well, we believe that we agree with the district court that it would create unnecessary delay and prejudice to allow them to intervene. But with respect to this particular argument, we do think it's very significant that they are now suggesting it's such a crucial argument for them, but they have never actually advanced it when they have had the opportunity to do so, because their argument is they're very worried about damaging precedent on this point. But again, there is the risk that such a damaging precedent would emerge from this court's consideration of a preliminary injunction appeal. They had an opportunity to say something about it in the amicus brief, and they chose to say nothing at all. But the government has fleshed out its position. I believe that recently was the first time that the government ever said that Texas could refuse to give driver's license to the deferred people. And also in its supplemental brief at page 20, before the response, it was the first time that they said there were no significant interests of third parties. You say that the would-be intervenors didn't flesh out their argument. The government has fleshed out and refined its argument. Well, we would say, Your Honor, that the core thing that the Jane Doe's object to is this principle that DAPA does not straightforwardly demand states to provide driver's licenses to deferred action recipients. And the federal government took that position in their response to our motion for the preliminary injunction. And as I mentioned, the Jane Doe's then went on to not only praise the analysis in that brief, but also to incorporate it in full and to join it. So we think it is strange for them now to suggest that the argument is so at odds with what they believe. And as to the other point they raised, which is that the government should have raised a factual challenge to our standing argument based on driver's licenses. First of all, the government made a variety of arguments against our standing position, including factual arguments, including even an argument that's virtually identical to the one that the Doe's would like them to make, namely that there is some inconsistency between our position and our public documents. And so, again, this is a very narrow disagreement. And, again, it's a post-Hogg disagreement because, again, the Jane Doe's had an opportunity to make this argument to the district court, and instead they relied largely on the government's brief, which suggested they were satisfied with the government's discussion of standing, even though by then the declaration that they object to had already been filed. And as we suggested in our brief, virtually without any response, this particular argument that they would like the government to make now, namely that there is a tension between the Peters Declaration and our budget documents, not only is that argument entirely wrong and implausible because there's actually no tension between those two sources, but it's also largely irrelevant and it wouldn't have changed anything in the outcome because the most that this argument could possibly do is to undermine one theory of standing with respect to one plaintiff, Texas. But, for instance, both Wisconsin and Indiana put in very similar declarations suggesting that they have very similar costs, and the Jane Doe's have not suggested any way to question those. So the district court did not reach them, but had it reached them, they were uncontested. And in addition, especially after this state panel's opinion, it has become clear that we have at least one other valid theory of standing, namely our theory of standing based on the health, education, and law enforcement costs. And the district court made extensive fact findings supporting that theory, and the only reason it did not ultimately endorse that theory is because there were sort of speculative offsetting benefits that the federal government identified. But as I think has become clear after the state panel's opinion, such offsetting costs simply do not factor into the standing analysis, so therefore it's now clear that we have standing on that basis as well. Does the state wish to opine on the theory that there's adversity here because the district court characterizes as unacceptable and completely unprofessional certain conduct by the federal government? Yes, Your Honor. Thank you for that opportunity. Certainly it's the case that the district court has harshly criticized the federal government for some of its conduct in this case. But we think all of that criticism has had to do with the manner in which they have implemented DAPA. In particular, they began implementing it earlier than they suggested that they would, and then they continued implementing it after the injunction had issued. But none of the criticism has to do with the ability of the federal government to put forward the legal argument in support of DAPA, and we think that— You don't think it undermines the credibility of the United States before the district court and that that likewise would then undermine the position of these interveners if they're not allowed to appear as parties? Well, I would make two responses to that, Your Honor. First of all, we think that the Department of Justice and the federal government is an unusual litigant. We think there's a very strong presumption that with their tremendous resources and their tremendous cachet, they're able to adequately defend the adequacy of a federal program. So even if a private litigant's credibility might be irretrievably tarnished, the same might not be true for the Department of Justice. I don't understand where that's coming from. I do not understand that argument at all. Well, in that case, the second argument I would make, Your Honor, is that the best source to determine what the point of view of the district court is is the district court itself. And the district court has said a lot of harshly critical things, as I have mentioned. But it has never suggested either that the Jane Does renew their intervention motion. It has never invited anybody else to intervene. And if the district court ever reaches the conclusion that the Department of Justice is not the appropriate representative for the legal position that they're advancing, the district court has a number of options to make that clear and to address that situation. So if the question is whether the views of the district court count in favor of intervention, we would say that they do not. But if you're talking about delaying the proceeding, what you just described, hypothetically, I don't expect that would ever happen, but that would delay the proceeding much longer than any delay that you're claiming from allowing the intervention of the Jane Does here. Well, that may be true, but I agree, Your Honor, that it's not likely to happen. And so if I may just close very quickly, I would just say that ultimately this Court has always said that Rule 24 does put forward a practical test. The question is sort of the benefits versus the costs. And here the benefits are very little, and the costs in terms of delaying the progress of this very important litigation are quite high. Thank you, Mr. Potapoff. Thank you, Your Honor. Ms. Brinkman? May it please the Court. The district court was correct to deny intervention here. The Does have not demonstrated either the requirement that they show that there's inadequate representation or that they have a legally protectable interest. There is a strong institutional interest for governments with the presumption that this Court has established for adequate representation when the government is defending their own policies. And that robust defense is obvious here by the rounds of briefing, the supplemental briefing, the rounds of argument. You don't agree that our Court has departed from that or has seen the presumption overcome in a number of significant cases that have already been cited and discussed? In which, as you pointed out, Your Honor, often participated. Each of those cases, Your Honor, I think really focus in on particular facts. For example, the Broomfield case, those vouchers that were issued, they were state-created vouchers that parents had for their children to attend. So on the interest fact, there was a distinction. And also on the representation prong, there was a distinction because there the defendant government was under a court desegregation order that really created some conflict and adversity. And that kind of conflict and adversity creeps up in the other cases, Your Honor, that were discussed. For example, the Espy case. The intervener timber companies came in after a preliminary injunction was entered and they saw that as shifting their shared objective with the government because the government then had agreed for the, in light of the preliminary injunction, had issued a letter to apply in future contracts. And so this adversity came up in a much sharper area there that the court focused on between those with the timber contracts. We allowed intervention there even though they were quite a late entrant in that particular case. Right, because there was a change in that case, I think, after the preliminary injunction had been entered. And that's actually what established that adversity. I would also point to the Edwards case, Your Honor, which was the minority police officer's affirmative action case. And there were two organizations. One represented airport officers and another was patrolmen. And they were allowed to intervene. They were concerned about transfer and promotion opportunities. In that case, also, there had been earlier litigation from that association and they actually had a state law right to pursue those transfers. So I think the court has been very careful to look at the particular circumstances in different cases. And I think the circumstances in this case? Certainly, Your Honor. With the possible adversity? I think both of the presumptions still exist here and are not overcome, Your Honor. First, on the point that the does have pointed to about the ongoing proceedings in the district court, those proceedings do not have to do with the litigation of the merits of the case. And, in fact, the district court has stayed all litigation on the merits right now. And, certainly, there has been no adjudication of misconduct by government counsel. There was a miscommunication. And the government has expressed deep regret to the court about that. And the court is continuing to have the government address issues that the court still has about that. But, certainly, it's highly unusual for a federal district court to say that the government's conduct is unacceptable and completely unprofessional, isn't it? And wouldn't that highly unusual circumstance bode for the would-be interveners? We certainly, with all and utmost due respect and with all regret for the communication that occurred, do not agree with that characterization. We believe that the government counsel has behaved and handled it with all professionalism. There was a miscommunication, Your Honor, and that is something that the court is continuing to look to. That's highly unusual, though, because the government conducts itself so well, isn't it? Thank you, Your Honor. I think when a miscommunication arrives and the counsel are trying to work through it and the court is trying to understand, that is what the district court continues to handle and address. I would also want to point out that the government has not conceded that there was any violation of the injunction. There was no intentional act to issue these longer-term documents after the injunction. Again, the government informed the court, and the court is continuing to address those questions. If I could shift, I think, to the significance of what the does here have urged would be the reasons to justify their intervention, the adversity, I would point to two things that they've identified. They make a suggestion that the government has not challenged the factual underpinnings of the Texas's standing here about the cost of driver's license. Of course, we have challenged some of those and pointed out the inadequacy of the record and the offsetting of benefits to the state, but more significantly,  but at this point, what the government has pursued is a legal argument with all due respect, which we believe that we should prevail on both standing and non-justiciability having to do with the case that would then result in dismissal of the entire case. If we don't prevail on that and discovery does proceed, certainly there could be discovery into those facts, but that's the kind of litigation choice and strategy which the court has made clear doesn't give rise to adversity. For example, in the Saldano case, the court recognized that there could be those different choices and nothing that the government is handling in this litigation at all forecloses the factual development that the does would suggest. Moreover, they have only talked about that factual development with respect to one of the plaintiffs, and as opposed to the United States legal argument, which would support dismissal of the entire case at this juncture, even if there were disputes about Texas's factual underpinning that were litigated, and we would prevail on that, which we certainly could, there would be the other plaintiffs that would have the factual development. So that's a much more factual, intensive, and time-consuming, which is not foreclosed, but certainly the legal argument at this point is an argument that would take care of the other case. The other point I'd make— The government's letter brief on the merits case filed Monday. The government argued that Texas may avoid its injury by declining to offer subsidized licenses to aliens accorded deferred action. Is that contrary to the interests of the Jane Does? And additionally, am I to understand that the government's position is that that doesn't affect— there's no preemption or equal protection problem with doing so? On the latter questions, Your Honor, I think that is really a question that my co-counsel will dig into in depth on the merits. What I would say here is, as far as intervention and being able to support adversity on intervention, we have the same objective of defending the legality of the deferred action guidance as the Does do. And indeed, the Does counsel has filed a very helpful amicus brief to this court and has been able to make legal arguments it wanted to. As the states pointed out, they have not made this driver's license argument, but they have filed a very helpful amicus on that. And I would point out that at page 21 of their reply brief, the Does recognize that—and this is a quote— DAPA itself does not require the states to grant any benefits, quote. Right, but to single out the Does category and say you can specifically exclude them, isn't that bring an adversity to a head because that's the first time you— you offer these benefits, they're not entitled to it, the driver's license don't cost too much. Those are in accord. But when you say you're allowed to exclude this particular category and the government's going to bless that as opposed to seek preemption of that, that seems to be an adversity. I would say a couple things, Your Honor. First, we did argue that in the district court, and the briefs make clear as they go through this. Second of all, the question here, Your Honor, again as my co-counsel will address, is the situation with the current Texas statute. The question of how Texas may be able to change its subsidization, for example, and whether it would choose, it is very speculative at this point. They have not indicated that they would change it. They have not come forward with that argument. And for the point of intervention, defending the validity of the deferred action guidance, that is not an interest that the does would have in the substance that forms the basis for this litigation. Switching for a moment to the fact that they have not shown a legally protectable interest, that's what the interest has to be. And this court's cases are very clear that it goes to the basis for the transaction that is at issue. Here it is the validity of the deferred action guidance. And the court has made clear that there has to be some kind of ownership or protectable legal status here. And if I may, Your Honor, the does here have conceded that they do not have a legal entitlement to deferred action. And they recognize that even if deferred action is accorded an individual, it is something that is not a defense to removability and is something that is revocable. Significantly here, and this very much distinguishes the other cases, Judge Smith, that we talked about before, I think on this interest component, Congress has spoken to this. In Section 1252G, Congress has made clear, and the Supreme Court has reinforced this in Reno v. the AADC case, that individuals do not have a right to challenge the denial of deferred action nor the commencement or continuation or enforcement of removal orders. We think that is very significant. Indeed, another provision, 1252A2B, similarly precludes judicial review of any employment authorization. So we would say here that really distinguishes the other cases and does make clear that the transaction that's at issue here, there is no legally protectable interest. And indeed, I think looking at that statement and intent of Congress, we know also that if the does here were somehow held to have that kind of interest, it would really be an end run around Congress's intent that these not be subject, this area of discretion be subject to judicial review, because then anyone who believed they were eligible for consideration of deferred action would also have that type of legally protectable interest, which we look to what Congress said, and it is evidence that they did not intend that. So are you saying then that others would try to intervene, or is that your suggestion? That really, perhaps, Your Honor, but it goes more, I think, to the fundamental question of whether there's a legally protectable interest. Regardless of whether anyone else would try to intervene, I would certainly think it would be pretty late at this point under the first prong, but it goes to the legal question that this Court has made clear about whether or not there is a legally protectable interest in the would-be interveners in the transaction that underlies the substance of the litigation. All right. Thank you, Ms. Brinkman. Thank you, Your Honor. Ms. Perales, you saved time for rebuttal. Let's give Ms. Perales seven minutes. I think you were under the impression you were out of time before, and you weren't really, and then Ms. Brinkman spoke a little bit on the red light, so you can have seven minutes. Thank you, Your Honor. I will fit my five points into my seven minutes. First, Texas argues today that the loss of credibility of the federal government in the district court . . . Excuse me. Just one minute. Be sure you get to the last point she made. Put that on your list. Okay. Thank you, Your Honor. All right. At some point. Go ahead. Texas says now that the loss of credibility of the federal government in the district court is not that big a deal, but I would point the Court to Record on Appeal 5885 through 5892 in lieu of simply reading to you some of the things that Texas has said in the district court, calling for the possibility of sanctions, for inaccurate and misleading information, and talking about the serious questions that have been raised about any statements that are being made by the defendants, and also stating that the federal government has a complete grasp of what it's doing, and thus suggesting that the statements that it is making are not believable. Second, the Doe's did not join the government's argument regarding states stripping driver's licenses of individuals with deferred action. The Doe's filed their intervention papers on January 14th when it wasn't clear to the Doe's or to the plaintiff's states that the federal government was making this argument. The federal government simply cited a statute, 8 U.S.C. 1621, that doesn't talk about driver's licenses. It talks about occupational licenses, like hairdressers and plumbers. It wasn't until later, in the month of January, on the 30th, that the federal government filed its cert. reply and made absolutely clear to all of us that it was arguing that driver's licenses need not be issued to deferred action recipients. At that point, the state of Texas filed something in the district court complaining about this new position that had been taken, and the federal and the states also complain about this in their brief in the main case at 29 and 30, criticizing defendants for their shifting positions. My third point is that the federal government, even today, doesn't really engage with the standard on the presumption for adequate representation when the government is a party. It isn't just that the government is a party that raises the presumption of adequate representation. It's that the government is charged with being the legal representative of the movements. You haven't heard anything from the federal government on that because the federal government knows that it is not the legal representative of the Doe's. The federal government represents its interest in upholding its executive authority and its broad public interest in administering the immigration system. It does not represent the Doe's in their specific and personal interest in remaining in the U.S., and, in fact, if the Doe's were ever placed into removal proceedings, not only would the federal government not be defending them, it would be the federal government that would be prosecuting them. There is also no ultimate objective here, as suggested by Texas. It simply doesn't apply when the interests are as different between the Doe's and the federal government as we have here, and we've also rebutted that with the adversity that's come forward that has emerged on the driver's license. Even the federal government, in this argument today, has talked about how a change in the government's position in this court's past cases has provided a basis for finding adversity, and we would assert that that has happened here. Even though there was always the potential for adversity, and we talk about that in our papers in the district court, it has, in fact, come to pass as well. Finally, the plaintiff states say that the federal government's failure to challenge the factual assertions that are made by Texas about its financial losses giving out driver's licenses isn't really that important because the district court made a lot of findings that would support standing for lots of different states. But we would just like to remind the court, and as it knows, the district court only found standing for Texas, and it based it only on the loss of money through the issuance of driver's licenses. So that argument is, in fact, a very important argument that the Doe's want to make, and that have not been made by the federal government. Here, the federal government has suggested that it might make that argument later, but standing is very foundational. The Doe's feel that we can walk and chew gum at the same time, and the federal government ought to be able to do the same thing. And finally, the suggestion that a role as amicus would be sufficient is not correct. Serving as amicus does not allow the Doe's to introduce evidence, does not allow the Doe's to make argument in the district court, and because they will be directly affected, this case does not fall in line with cases where perhaps the interests were more attenuated or had to do with a distant stare decisis effect. Here, the fate of the 2014 guidance will immediately and directly affect the situation of the Doe's, who, if it had not been enjoined, would have submitted papers to register themselves and seek consideration for deferred action. In the Texas redistricting litigation with which you and I are well familiar, you will, of course, recall that the United States vigorously rejected the suggestion that it could participate adequately as amicus rather than being allowed to intervene. And, of course, your position is fully consistent on that, but theirs is not. Yes, Your Honor, that is right, as well as the federal government's position on driver's licenses and deferred action being a little bit flexible between this case and the case in Arizona. I didn't mean to pull you off your last point, so go ahead. My last point, I would like to answer Judge King's question. Well, Ms. Brinkman was making the point that the Jane Doe's don't have any legally protectable interest here, and you touched on that earlier, but if you would address that, I would appreciate it. Yes, Your Honor, thank you for that opportunity. What the rule requires is not a vested right or an enforceable legal right that is somehow created by the 2014 guidance. The Doe's agree that the 2014 guidance is a guidance to exercise prosecutorial discretion, a guidance to grant deferred action or not, and all of these cases that the federal government cites about immigrants suing for deferred action are simply an opposite. The rule requires an interest related to the subject matter of the case. That interest does not have to be one that is bestowed by the policy that is at issue. The interests that the Doe's have are preexisting interests that they have, liberty interests in the care and custody of their children, the liberty interest in remaining in their communities and being able to work and support their families. These are interests that are affected and that this court has found in the line of cases SB Glickman, also Blumfield most recently, are sufficient interests to support intervention. Thank you. Thank you, Ms. Prowlis. Your appeal is under submission. The court will take a brief recess before hearing the second case.